**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Michelle L. Gearhart, SBN 263573
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: (805) 543-0990
gearhart@ammcglaw.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
John McAdams*
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
John.McAdams@pallasllp.com

**Pro hac vice* applications forthcoming

*Counsel for Petitioners*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| In re Application of<br><br>Oasis Focus Fund LP and Quadre Investments, L.P.,<br><br>Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. ________<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |
|---|---|

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... 1

**FACTUAL BACKGROUND** .......... 4

A. Parties to the Foreign Proceeding and the Merger .......... 4

B. The Appraisal Proceeding .......... 7

C. Respondent and the Discovery Sought .......... 7

**ARGUMENT** .......... 10

**I. The Application Satisfies Section 1782's Statutory Requirements.** .......... 11

A. Respondent Is Found in this District. .......... 11

B. The Discovery Sought Is "For Use" in a Foreign Proceeding. .......... 14

C. Petitioner Is an "Interested Person." .......... 15

**II. The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.** .......... 16

A. Respondent Is a Non-Participant in the Appraisal Proceeding. .......... 16

B. The Cayman Court Will Be Receptive to the Evidence Sought. .......... 17

C. The Application Does Not Circumvent Foreign Proof-Gathering Restrictions. .......... 20

D. The Subpoena Is Not Unduly Burdensome. .......... 21

**CONCLUSION** .......... 23

ii

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

**TABLE OF AUTHORITIES**

Cases

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434 (S.D.N.Y. 2011) .......... 19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) .......... 20

*Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) .......... 17, 22

*First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) .......... 22

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-01019, ECF No. 56 (C.D. Cal. Jan. 6, 2022) .......... 18

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) .......... 19

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020) . 4, 13

*In Matter of Appl. of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB), 2014 WL 2795832 (N.D. Cal. June 19, 2014) .......... 11

*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) .......... 14

*In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) .......... 14

*In re Appl. of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) .......... 22

*In re Appl. of Temporary Services Ins. Ltd.*, No. 09–MC–48S(Sr), 2009 WL 2843258 (W.D.N.Y Aug. 28, 2009) .......... 15

*In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) .................... 19

*In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ..... 19

*In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, ECF No. 1-5 (E.D. Mo. Mar. 1, 2021)................. 19

*In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022) ..... 3, 19, 21

*In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022)... 3, 13, 21

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998) ........................................................................... 21

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) ........................................................................... 14

*In re Ex parte Appl. of Ambercroft Trading Ltd.*, No. 18-mc-80074-KAW, 2018 WL 2867744 (N.D. Cal. June 11, 2018) ........................................................................... 19, 20, 22

*In re Ex parte Appl. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ........................................................................... 17, 19, 21

*In re Ex parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022)........................................................................... 16, 20, 21

*In re Gushlak*, No. 11–MC–218 (NGG), 2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ....... 22

*In re Koninklijke Philips N.V.*, No. 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30, 2018)............ 20

*In re Mut. Assistance of Local Court of Wetzlar, Germany*, No. 1:17–mc–00078–SKO, 2018 WL 2183966 (E.D. Cal. May 11, 2018) ........................................................................... 11, 22

*In re Penner*,
No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ............... 19

*In re Petrobras Secs. Litig.*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019) ............................................................ 11

*In re Pioneer Corp. v. Technicolor, Inc.*,
No. LA CV18-04524 JAK, 2018 WL 4961911 (C.D. Cal. Sept. 12, 2018) ... 11, 15

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018) ........................................................... 18

*In re Republic of Ecuador*,
No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ........................................................................... 10, 16, 22

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
555 F.2d 720 (9th Cir. 1977) ........................................................................ 14

In re *Wallis*,
*No. 18-MC-80147-DMR*,, 2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ......... 2

*In re Wireless Facilities, Inc. Derivatives Litig.*,
562 F. Supp. 2d 1098 (S.D. Cal. 2008) .......................................................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) (“*Intel*”) ................................................................. passim

*IPCom GMBH & Co. KG v. Apple Inc.*,
61 F. Supp. 3d 919 (N.D. Cal. 2014) ............................................................ 19

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) .................................................................. 12, 13

*LP Digit. Sols. v. Signifi Sol., Inc.*,
921 F. Supp. 2d 997 (C.D. Cal. 2013) ........................................................... 11

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .......................................................................... 14

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,
Civ. No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .................................................................................................. 22

*Siemens AG v. W. Digital Corp.*,
No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) .......... 17, 20

Statutes

28 U.S.C. § 1782 .......... passim

Rules

Local Rule 7-2(b)(1) .......... 1

vi

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Through this Application under 28 U.S.C. § 1782 (the "**Application**"), Oasis Focus Fund LP and Quadre Investments, L.P. ("**Petitioners**") respectfully seek an order: (a) granting Petitioner leave to serve a subpoena (the "**Subpoena**") on Christopher Hsu ("**Hsu**" or "**Respondent**"); (b) directing Respondent to produce the materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Respondent to appear for a deposition in compliance with the Subpoena on a mutually agreeable date within a reasonable time after Respondent's confirmation of the final production of documents in response to the Subpoena; and (d) granting any and all other relief the Court deems just and proper.

Pursuant to Local Rule 7-2(b)(1), Petitioners state that they cannot presently schedule a date and time for a hearing on this Application, should a hearing be necessary, as the matter has not yet been assigned.

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to Section 1782 to take limited discovery from an individual residing and an entity found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Grand Court**") on July 15, 2022 (the "**Appraisal Proceeding**").  In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of its shares in 51job, Inc. ("**51job**" or the "**Company**"), a Cayman Islands company that was delisted from the NASDAQ Global Select Market and taken private on May 6, 2022.  Petitioners' shares were forcibly canceled through a merger (the "**Merger**") orchestrated by its majority shareholder, company insiders and affiliates, and private equity funds (the "**Participants**"), the purpose of which was to enable the Participants to acquire 100% control of the Company.  Respondent served as the Company's "strategic advisor" for the Merger, participating in extensive communications with members of the Buyer Consortium, Company management, the Special Committee that approved the transaction, and other third parties.  The breadth of these communications and meetings is clear from the Proxy Statement, which

describes Respondent's company, Rocketeer Management, as a central figure in the negotiation of the Merger. Through this application, Petitioners seek tailored and proportionate discovery from Respondent concerning the Merger's negotiation and approval, and the fair value of the Company's shares—the core issues in the Appraisal Proceeding.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before a foreign tribunal. Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures." *In re Wallis*, No. 18-MC-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018). Petitioners' Application meets the statutory requirements of Section 1782: (i) Respondent "reside[s]" or is "found" in this District because he is resides in this District, or, at a minimum, has significant contacts with this District; (ii) the requested discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, as parties to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from "nonparticipant[s] in the matter arising abroad." *Id.* Respondent is not party to the Appraisal Proceeding or otherwise subject to the jurisdiction of the Grand Court. As recognized in *Intel*, "nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

*Second*, "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioners'

Application. *Id.* There is no indication, let alone "authoritative proof," suggesting that the Grand Court might be unreceptive to Section 1782 assistance. To the contrary, several U.S. courts have granted Section 1782 applications for discovery in aid of Cayman litigation, including a court in this District, which granted a Section 1782 application against Respondent for a different Cayman Islands appraisal proceeding against a company for which, as here, Respondent acted as the "strategic advisor." *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022). In that case, Respondent agreed to provide to the petitioners "all documents Respondent provided to [the company in the appraisal proceeding]," "a privilege log of documents withheld or redacted for privilege," and "submit to a deposition under the Federal Rules of Civil Procedure." *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022) (Stipulated Order).

*Third*, the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. The requested discovery does not implicate any privilege or protection that would make it improper under Cayman law.

*Fourth*, the requested discovery is not "unduly intrusive or burdensome." *Id.* The Subpoenas are tailored to seek evidence addressing the fair value of Petitioners' shares in the Company and the process that the Special Committee (defined below) and the Company undertook to negotiate, approve, and recommend the Merger.

*Finally*, this Court should exercise its discretion to order production of any responsive discovery that Respondent have in his possession, custody, or control, regardless of the physical location of that discovery. Section 1782 is extraterritorial in reach, and courts commonly order discovery of documents located abroad. Nor should the location of the requested discovery alter the Court's discretion. *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("concerns about producing documents

located outside the United States is largely anachronistic, as . . . documents and information are often located in electronic storage, which can be accessed with equal effort from any location").

## FACTUAL BACKGROUND

### A. Parties to the Foreign Proceeding and the Merger

Petitioners Oasis Focus Fund LP and Quadre Investments, L.P. are members of the group of dissenting shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding. *See* Declaration of Jonathan Guy Manning in Support of Petitioners' Application ("**Manning Decl**.") ¶ 6.

The Company is headquartered in Shanghai, the People's Republic of China ("**PRC**"). *Id.* at ¶ 7. The Company provides integrated human resources services in the PRC and operates several online recruiting platforms and mobile applications to connect individuals with employment opportunities. *Id.* Before the Merger, the Company's stock was publicly traded on the NASDAQ Global Select Market (through American Depository Shares ("**ADS**")) under the JOBS symbol. *Id.*

The Merger process first began in September 2020, during the peak of the COVID-19 pandemic, when the Company approached Rocketeer Management, as a "strategic consultant, to explore potential strategic transactions, including possible minority or control transactions, mergers and acquisitions, debt financings or equity financings." Manning Decl. Ex. 1 ("Proxy Statement") at 28. On September 21, 2020, the Company announced the formation of the special committee (the "**Special Committee**"), comprised of Li-Lang Chen and Eric He, two purportedly independent directors, to consider and negotiate proposed transactions and strategic alternatives. *Id.* at 29. This process culminated in the Company executing a merger agreement (the "**Original Merger Agreement**") on June 21, 2021. *Id.* at 37.

The Original Merger Agreement was a non-arms'-length transaction to take the Company private by a buyer consortium (the "**Buyer Consortium**"), which included

Mr. Rick Yan (the Company's director, CEO, and president), three of his associated investment vehicles, and several other funds—who had committed to "work exclusively with each other." *Id.* at i-ii, 33. Moreover, the "Management Continuing Shareholders"—including Mr. Yan and his three investment vehicles, along with other Company management and related investment vehicles—"expressed unwillingness" to "sell their shares in any other transaction involving the Company," and entered into a support agreement to vote in favor of the Merger. *Id.* at 11, 43. The Original Merger Agreement also did not require approval by a majority of the minority shareholders ("**MoM Protection**"), a common corporate-law device used to protect minority shareholders from controlling shareholders. *Id.* at 35. The Original Merger Agreement provided for consideration of US$79.05 per share and per ADS ("**Original Merger Price**"). *Id.* at 36. This undervalued the Company's shares, which—as late as January 16, 2020—traded at $91.75. Manning Decl. ¶ 12.

Following the execution of the Original Merger Agreement, the Company filed a Schedule 13E-3 form and draft proxy statement with the Securities and Exchange Commission on July 6, 2021. Manning Decl. Ex. 2. However, after that date, the Company went silent for four months. Manning Decl. ¶ 14. Finally, on November 8, 2021, the Company issued a vaguely worded announcement that "certain members of the buyer consortium" had "been in consultation with Chinese regulators on recent regulatory changes in China that may be applicable to the Company and the [Original Merger]." Manning Decl. Ex. 3. It is now clear from the Company's subsequent filings that the "consultations" with the PRC regulators were initiated in early August 2021, by members of the Buyer Consortium after discussions with Mr. Yan and the Company. It appears from the information currently available to Petitioners that the Buyer Consortium approached certain PRC regulators (who are not specified in the Proxy Statement or any other materials) as a ruse to delay the Merger and create a false pretense for the Buyer Consortium to renegotiate the Original Merger Agreement on

terms beneficial to the Buyer Consortium at the expense of the unaffiliated minority shareholders. Manning Decl. ¶ 14.

On January 12, 2022, the Buyer Consortium submitted to the Special Committee a proposal letter that changed the terms of the Original Merger Agreement, offering a dramatically reduced consideration of $57.25 per share—or a *28% decrease* from the Original Merger Price. *Id*. at ¶ 15. The Special Committee was under *no* obligation to re-negotiate the binding Original Merger Agreement (and should not have done so). *Id*. Nonetheless, over the next two months, the Special Committee re-negotiated with the Buyer Consortium, eventually agreeing to "accept" a renegotiated price of $61 per share (the "**Revised Merger Price**")—a 23% decrease from the Original Merger Price and the bare amount necessary for Duff & Phelps to receive its US$500,000 capped incentive fee. *Id*. at ¶ 16. The Revised Merger Price represented a 23% decrease from the Original Merger Price. *Id.*

On March 1, 2022, the Company executed an amendment ("**Amendment No. 1 to the Original Merger Agreement**"), which, amongst other things, reflected the Revised Merger Price. Manning Decl. ¶ 17. Amendment No. 1 to the Original Merger Agreement also did not require MoM Protection. *Id.* at ¶ 19. In addition, the "go-shop" provision—a clause commonly included in a merger agreement, which compels a target company to seek competing bids—was severely truncated: It required only a two week "go-shop" period. Proxy Statement at 14. A go-shop period is routinely at least twice as long.

On March 29, 2022, the Company issued a proxy statement (the "**Proxy Statement**"). Manning Decl. ¶ 3. The Proxy Statement explained that "[t]he purpose of the Merger is to enable the Participants to acquire 100% control of the Company." Proxy Statement at 9. Nonetheless, the Special Committee recommended that minority shareholders vote in favor of the Merger, even at the Revised Merger Price. *Id.* at viii-ix, 94. An Extraordinary General Meeting of the Company's shareholders was held on April 27, 2022, to vote on the Merger. Given that the so-called

"Continuing Shareholders" and their affiliates—being certain members of the Buyer Consortium, other members of the Company's management, and the Company's largest shareholder beneficially held 56.2% of the Company's issued and outstanding shares at the time of the Proxy Statement and executed a support agreement to vote in favor of the Merger, the Merger was unsurprisingly approved. Manning Decl. ¶ 20 & Proxy Statement at 11-12. On May 6, 2022, the Merger completed, and the Company was delisted from the NASDAQ Global Select Market. Manning Decl. ¶ 21. Mr. Chao served as Chairman of the Company's board of directors throughout the Merger's negotiation and approval. Proxy Statement at E-1.

**B. The Appraisal Proceeding**

On July 15, 2022, both the Company and Petitioners (along with other dissenting shareholders) initiated proceedings before the Grand Court under Section 238 of the Companies Act of the Cayman Islands ("**Section 238**"), asking the Grand Court to determine the fair value of their former shares in the Company. These proceedings have been consolidated and will be heard together as the Appraisal Proceeding. Manning Decl. ¶ 24. Petitioners and the other dissenting shareholders will have the opportunity to present (among other things) documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Grand Court. In determining the fair value of the dissenting shareholders' shares, the Grand Court will examine both the valuation of the Company and the fairness of the process that led to the Special Committee's and the Company's approval of the Merger. *See* Declaration of Duane L. Loft ("**Loft Decl.**") Ex. 9, Declaration of Justice Ingrid Mangatal ("**Mangatal Decl.**") ¶ 14.

**C. Respondent and the Discovery Sought**

Respondent Christopher Hsu is a representative of Rocketeer Management ("RM"). Manning Decl. ¶ 9. According to the Proxy Statement, "On September 14, 2020, the Company engaged Rocketeer Management ('RM') as a strategic consultant

to explore potential strategic transactions, including possible minority or control transactions, mergers and acquisitions, debt financings or equity financings." Proxy Statement at 28. The Proxy Statement goes on to describe the significant role that RM, through Respondent, played in the Merger:

- RM initiated and engaged in the initial discussions with DCP Capital, one of the members of the Buyer Consortium. Proxy Statement at 28. Over the next two days, "following exploratory discussions between RM and DCP representatives of RM and Company management discussed DCP's interest in a potential acquisition of the Company." Proxy Statement at 28.
- RM communicated with providers of debt financing for the Merger. Proxy Statement at 28 ("Later that day, representatives of CMB and SPDB reached out to representatives of DCP and RM and expressed an interest in providing debt financing for the Proposed Transaction.").
- RM reviewed the Original Proposal from the Buyer Consortium and participated in initial meetings with Company management about the Proposal. Proxy Statement at 29 ("On September 20, 2020, the Board held a telephonic meeting, together with Company management and representatives . . . RM . . . to discuss the Original Proposal. During the course of this meeting, representatives of RM reviewed the Original Proposal with the Board and described discussions among representatives of the Company, RM and DCP prior to the submission of the Original Proposal.").
- RM communicated with Recruit extensively about the Proposed Transaction. *See, e.g.*, Proxy Statement at 29 ("On September 27, 2020, representatives of RM contacted Recruit to discuss Recruit's views regarding the Proposed Transaction."); *id.* at 30 ("On October 13, 2020, representatives of Recruit had a discussion with representatives of RM, during which RM provided Recruit with more information regarding the Original Proposal."); *id.* at 31 ("representatives of RM and representatives and advisors of Recruit engaged in

multiple discussions to exchange views on the implications of a going private transaction, such as the Proposed Transaction, and general market and industry conditions").

- RM attended multiple meetings of the Special Committee that approved the transaction. *See, e.g.*, Proxy Statement at 30 ("On October 6, 2020, the Special Committee held a telephonic meeting with representatives of RM and Davis Polk. RM informed the Special Committee that each of DCP and Ocean Link had requested to conduct due diligence review of the Company in order to evaluate potential transactions with the Company."); *id.* at 32 ("representatives of each of DCP and Ocean Link contacted representatives of RM to express their respective strong desire to reduce the purchase price proposed in the Original Proposal"); *id.* at 36.
- RM communicated with Mr. Yan extensively about the transaction. *See, e.g.*, Proxy Statement at 30-31 ("On October 21, 2020, representatives of RM reached out to Mr. Yan, in his capacity as a major shareholder of the Company, to discuss his view on the Proposed Transaction. . . . Over the next several weeks, representatives of RM had further discussions with Mr. Yan regarding his considerations related to the Proposed Transaction.").
- RM participated in the negotiations between the Buyer Consortium and the Company. Proxy Statement at 39-41.

Petitioners' Application seeks discovery from Respondent on issues relevant to the Appraisal Proceeding, including: (i) the fairness of the Original Merger Price and the Revised Merger Price, and the process leading to their approval by the Special Committee and the Company's board; (ii) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by the Company's board or provided to shareholders; (iii) any alternative bids to acquire the Company; and (iv) the shareholders' approval of the Merger. The Grand Court will accept and consider any relevant evidence submitted by the parties, so long

as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence. Mangatal Decl. ¶ 33. This requested discovery will accordingly significantly assist the Grand Court in evaluating the Merger and determining the fair value of Petitioners' former shares in the Company. *Id.* ¶ 22.

## **ARGUMENT**

28 U.S.C. § 1782 permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel*, 542 U.S. at 249. The statute states in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person. 28 U.S.C. § 1782.

An application under Section 1782 must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Republic of Ecuador*, No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010).

If the statutory requirements are met, the court then considers four discretionary "*Intel*" factors: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering

restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.[1]

## I. The Application Satisfies Section 1782's Statutory Requirements.

### A. Respondent Is Found in this District.

There does not appear to be binding precedent in this District on whether the "resides or is found" language in Section 1782 means the court must have personal jurisdiction over the party from whom Petitioners seek discovery. However, courts in other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal jurisdiction. *See In re Petrobras Secs. Litig.*, 393 F. Supp. 3d 376, 381 (S.D.N.Y. 2019) ("district courts should read the 'resides or is found' language in § 1782 to incorporate a personal jurisdiction requirement").

This Court has general personal jurisdiction over Respondent. General jurisdiction can be established by an individual's domicile or, in the alternative, his or her "continuous and systematic" contacts with the forum. *See LP Digit. Sols. v. Signifi Sol., Inc.*, 921 F. Supp. 2d 997, 1003 (C.D. Cal. 2013). Respondent satisfies both standards. *First*, Respondent is domiciled in this District. "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place,' and [intends] to remain there permanently or indefinitely." *Lew v. Moss*, 797

[1] No one factor should be given more weight than the others, and no one factor is dispositive. *See In re Mut. Assistance of Local Court of Wetzlar, Germany*, No. 1:17–mc–00078–SKO, 2018 WL 2183966, at *3 (E.D. Cal. May 11, 2018). The *Intel* factors "involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives." *In Matter of Appl. of Action & Prot. Found.*, No. C 14–80076 MISC EMC (LB), 2014 WL 2795832, at *4 (N.D. Cal. June 19, 2014). In its analysis, the court must consider "the twin aims" of "providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *In re Pioneer Corp. v. Technicolor, Inc.*, No. LA CV18-04524 JAK, 2018 WL 4961911, at *4 (C.D. Cal. Sept. 12, 2018).

F.2d 747, 749-50 (9th Cir. 1986).  Relevant to establishing domicile are the following "number of factors [with] no single factor controlling":

> [C]urrent residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes.

*Id.* at 750.

According to a licensed private investigator's database search, Respondent is a "current resident" of a home in this District.  Burtis Decl. ¶ 3.  Aside from being listed as a "current resident" of this District, Respondent is registered to vote in the state of California, has a San Bernardino county phone number, and has family in this District.  Burtis Decl. ¶ 3.  Respondent until recently owned real property in this District: he was identified as the owner of a vacant lot in Oak Hills, California until 2020, and he was the owner of a condominium in Newport Beach until 2014.  *Id.*

Further, Respondent was charged in the Superior Court of California, Orange County, on June 16, 2018 with robbery in the first degree, criminal threats, grand theft, corporal injury on a spouse or co-habitant, vandalism with damage of $400 or more, brandishing a weapon, and disturbing the peace.  *Id.* at ¶ 4.  Documents for the case, captioned *People of the State of California v. Christopher Chungyi Hsu*, No. 18HF0847, list Respondent's address as the same residence in which investigator database show Respondent as a "current resident."  Burtis Decl. ¶ 3.  Respondent was initially held on a $100,000 bond.  Burtis Decl., Ex. A at 1.  Respondent was sentenced in February 2020 and was serving a three-year probation term set to end on February 5, 2023.  *Id.* at 19.

In the summer of 2022, Respondent filed a motion in his criminal case to have his probation terminated early, which the Orange County Superior Court granted in July 2022.  *Id.*  Just prior to that decision, Respondent agreed to produce documents in this District and sit for a deposition pursuant to a different Section 1782 application,

which was granted by a court in this District.  *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022) (Stipulated Order).

The weight of these facts irrefutably indicates that Respondent is domiciled in this District.  *See Lew*, 797 F.2d at 750 ("domicile is evaluated in terms of objective facts" and "statements of intent are entitled to little weight when in conflict with facts") (citation omitted); *id.* at 752 (holding a party was domiciled in California despite party working in Hong Kong because party stayed in California to visit his wife and children and maintained a valid California driver's license).

*Second*, if the Court finds that Respondent is not domiciled in this District, it should find that Respondent maintains "continuous and systematic" contacts here, satisfying the first statutory requirement.  In *In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1103 (S.D. Cal. 2008), the court found that a nonresident defendant had "continuous and systematic" contacts with California, even though the nonresident defendant "never intended to return to California once he left" over ten years earlier; the judge cited the non-resident defendant's "property ownership coupled with his other contacts with California, that is, maintaining a driver's license" and frequent visits.  *See also id.* (holding it was irrelevant that "the nonresident defendants claim the only reason [defendant] did not cut all ties with California was because his [ex-]wife" resided in California).  Respondent undoubtedly "resides or is found" in this District.

Respondent is properly subject to discovery of all responsive documents in his possession, custody, or control, notwithstanding that the evidence may be located abroad.  Under established precedent in this Circuit, 1782 Petitioners are entitled to discover all relevant evidence, even when the documents are in possession of a foreign affiliate.  *See, e.g.*, *Illumina*, 2020 WL 820327, at *10 (declining to "limit production to documents physically located within the United States" and explaining that "concerns about producing documents located outside the United States is largely

anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location"); *see also In re del Valle Ruiz*, 939 F.3d 520, 532-33 (2d Cir. 2019) (holding that "§ 1782 can be used to reach documents stored overseas" and "the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure" which, in turn, "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control.").[2]

**B. The Discovery Sought Is "For Use" in a Foreign Proceeding.**

To establish that the information sought is "for use" in a foreign proceeding, Petitioners must merely show that it has "the procedural right to submit the requested documents to" the foreign tribunal. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before [foreign] tribunals of the testimony or material sought."). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal."); *In re Accent Delight*, 869 F.3d at 131 (emphasis added); *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding"). Here, Cayman courts will

---

[2] *See also In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ("[T]he plain language of Section 1782 imposes no geographical limit on the production of documents[; t]o the contrary, [it] explicitly empowers courts to allow discovery to be taken and produced in accordance with the Federal Rules of Civil Procedure . . . and discovery under the Federal Rules is indisputably broad and can extend to materials located outside of the [U.S.].").

accept and consider any relevant evidence submitted by the parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not otherwise subject to an exclusionary rule of evidence. *See* Mangatal Decl. ¶ 33.

Further, in determining the fair value of the dissenting shareholders' former shareholdings in the Company, Cayman courts have emphasized the need to consider all facts and matters which may have a bearing on the determination of fair value. *See id.* at ¶ 20 (citing *Qihoo 360 Technology Co., Ltd* (unreported, October 9, 2017 CICA) ("The sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs full information."). The Cayman Court will undoubtedly accept and consider the Requested Discovery here, given its relevance in determining the fair value of the Petitioners' shares. *Id.* at ¶ 21. Moreover, there are no restrictions imposed under Cayman Islands law limiting the ability of parties in the Appraisal Proceeding to submit relevant documentary or testimonial evidence obtained pursuant to Section 1782. *Id.* at ¶ 18.

Finally, the Requested Discovery is intended for use in the Appraisal Proceeding. The Requested Discovery thus is therefore plainly "for use" in the Appraisal Proceeding under Section 1782, and Petitioner has thus satisfied the second statutory requirement. *See In re Appl. of Temporary Services Ins. Ltd.*, No. 09–MC–48S(Sr), 2009 WL 2843258, at *2 (W.D.N.Y Aug. 28, 2009) (finding discovery sought for use in Cayman proceeding satisfied this prong).

**C. Petitioner Is an "Interested Person."**

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Pioneer*, 2018 WL 4961911, at *5 ("An 'interested person' includes, but not limited to, parties in a foreign proceeding" (citing *Intel*)). Petitioners are claimants in the Appraisal Proceeding, Manning Decl. ¶ 6, and thus are "interested person[s]" under Section 1782.

## II. The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, the district court should consider, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264. Each of the *Intel* factors weighs in favor of granting the Application.

### A. Respondent Is a Non-Participant in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

As Justice Mangatal explains, Respondent is not a party in the Appraisal Proceeding, and therefore will not be subject to party discovery there. Mangatal Decl. ¶ 25. Further, because Respondent resides in the United States, the Cayman Court will not have jurisdiction to compel discovery from him. *Id.* Petitioners, therefore, will not be able to take discovery of Respondent through the Appraisal Proceeding, even though evidence from Respondent is likely to be highly relevant to the fair resolution of the dispute. Accordingly, this first *Intel* factor weighs in favor of granting the Application. *Intel*, 542 U.S. at 256 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."); *In re Nouvel, LLC,* No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("some parties here are not party to the foreign litigation, and based on the parties' submissions of expert testimony, the Court has some doubt that the requested discovery is or will become available in the foreign courts"); *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in

the international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

**B. The Cayman Court Will Be Receptive to the Evidence Sought.**

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate it is receptive to Section 1782 assistance. This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Ex parte Appl. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). There is a strong presumption that foreign tribunals will be receptive to evidence obtained in the United States. "[W]hen evaluating whether foreign tribunals would accept U.S. assistance," courts do not look for proof that the foreign tribunal will accept the evidence; to the contrary, they "look for 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782." *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995)) (emphasis in original). Absent "*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782," courts are to "err on the side of permitting discovery." *Varian Med. Sys.*, 2016 WL 1161568, at *4 (emphasis added).

Cayman courts will consider any evidence bearing on determining the fair value of dissenting shareholders' former shareholdings in a company. *See* Mangatal Decl. ¶ 20. Moreover, Cayman courts have specifically held it is permissible to use a Section 1782 application to obtain discovery for use in Cayman Islands proceedings. *See id.* ¶ 31.[3] Indeed, the Cayman Court of Appeal in *Lyxor Asset Mgmt. S.A. v. Phoenix Meridian Equity Ltd.*, 2009 CILR 553, expressly held that the right to obtain full

---

[3] As explained by Justice Mangatal, "Cayman Islands courts have thus held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under Section 1782 to obtain relevant evidence, including deposition testimony, for use in those proceedings." Mangatal Decl. ¶ 31.

discovery, including pre-trial deposition testimony, "is a right conferred by U.S. law—it is not a right conferred by, or *to be withheld under Cayman law*." *Id.* at ¶ 32 & Ex. C (upholding trial court determination to allow the use of discovery obtained through 28 U.S.C. § 1782) (emphasis added).

Similarly, discovery gathered pursuant to 1782 in a recent appraisal proceeding captioned, *In the Matter of Nord Anglia Education, Inc.*, FSD 235 OF 2017, was considered by the Cayman Court in its decision that the fair value of the company's shares was above the merger consideration offered to minority shareholders. In *Nord*, the Cayman Court expressly referred to the 2,900 documents the target produced in a Section 1782 proceeding, which "evidenc[ed] the work that [target] did," and stated that such documents "were obviously relevant to advancing a reasoned critique of [target's] DCF analysis." *In the Matter of Nord Anglia Educ., Inc.*, FSD 235 OF 2017 ¶ 49; Mangatal Decl. ¶ 39.

Further, multiple U.S. courts, including in this District, have recognized that Cayman courts are receptive to evidence obtained through Section 1782, including in cases granting Section 1782 discovery for use in Cayman appraisal proceedings. *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-01019, ECF No. 56 (C.D. Cal. Jan. 6, 2022); *see also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("In support of this assertion, the Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law.").[4] Indeed, a court in this District recently granted

---

[4] *See also Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 discovery for use in Cayman

(Continued...)

a Section 1782 application against Respondent for discovery for use in a different Cayman appraisal proceeding. *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022).

Thus, in the Appraisal Proceeding, Petitioners will have the right to acquire and present the Requested Discovery to the Cayman Court in support of its claims. *Id.* Moreover, the Cayman Court will accept and consider the evidence given its significance in determining the fair value of the Petitioners' shares in the Company. *See In re Ex parte Appl. of Ambercroft Trading Ltd.*, No. 18-mc-80074-KAW, 2018 WL 2867744, at *4 (N.D. Cal. June 11, 2018); *see also IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 924 (N.D. Cal. 2014) (rejecting the argument that subpoena issued pursuant to Section 1782 should be quashed because there was a "low probability" the information would be relevant to the foreign proceeding); *Varian Med. Sys.*, 2016 WL 1161568, at *4 ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782," courts tend to "err on the side of permitting discovery"). Accordingly, this factor also weighs in favor of granting the Application.

---

proceedings); *In re Penner*, No. 17-cv-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery"). Indeed, two district courts recently granted Section 1782 petitioners' applications for both document discovery and a deposition for use in an appraisal proceeding in the Cayman Islands. *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF No. 8 (S.D.N.Y. Mar. 3, 2021) (granting Section 1782 discovery for use in Cayman appraisal proceeding); *see also In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, ECF No. 1-5, at *8 (E.D. Mo. Mar. 1, 2021) (Cayman counsel declaration discussing Cayman courts' general receptivity to live witness testimony in appraisal proceedings and citing Cayman Islands law).

### C. The Application Does Not Circumvent Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Importantly, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *In re Koninklijke Philips N.V.*, No. 17-MC-1681-WVG, 2018 WL 620414, at *2 (S.D. Cal. Jan. 30, 2018); *Ambercroft Trading*, 2018 WL 2867744, at *5; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons [that] do not necessarily signal objection to aid from United States federal courts."); *Siemens AG*, 2013 WL 5947973, at *3. Moreover, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In re Ex parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022).

Here, the discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, as Justice Mangatal explains, "Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case" and thus "there is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad." Mangatal Decl. ¶ 65. Further, the Cayman Islands Court of Appeal has expressly held that "*prima facie* a party who can invoke the jurisdiction of the US District Court under § 1782 may choose to do so." *See Phoenix Meridian Equity Ltd. v. Lyxor Asset Mgmt. S.A. and Scotiabank & Tr. (Cayman) Ltd.* [2009 CILR 553]; Mangatal Decl. ¶ 32. This factor, therefore, weighs in favor of granting the Application.

**D.     The Subpoena Is Not Unduly Burdensome.**

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *Varian*, 2016 WL 1161568, at *5; *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("the discovery sought is not unduly intrusive or burdensome, and it appears reasonable and proportionate to the scope of the Luxembourgish and French actions").   Importantly, "Conclusory, unsupported statements of expense and burden are insufficient to demonstrate why the requested discovery is objectionable." *Nouvel*, 2022 WL 3012521, at *5.

Here, the Subpoena is narrowly tailored with respect to the time period and subject matter of the requests.  The requested discovery is substantially the same in scope as the Section 1782 discovery ordered against Respondent for use in a different Cayman appraisal proceeding.  *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 10 (C.D. Cal. Feb. 8, 2022).   In that case, Respondent agreed to provide to the petitioners "all documents Respondent provided to [the company in the appraisal proceeding]," "a privilege log of documents withheld or redacted for privilege," and "submit to a deposition under the Federal Rules of Civil Procedure." *In re Application of FourWorld Event Opp., LP*, No. 22-mc-00022-CAS-JPR, ECF No. 30 (C.D. Cal. June 24, 2022) (Stipulated Order).

*First*, the Subpoena is limited to documents and information directly relevant to two issues in the Appraisal Proceeding—(i) the process undertaken by the Company, including RM, that culminated in the recommendation of the Merger to the Company's stockholders and (ii) Respondent's role and responsibilities as a strategic consultant to the Company and its board, including the advice and analysis Respondent was tasked

with providing Concerning the Merger including any valuations.  These issues will be central in the Appraisal Proceeding.  *See* Mangatal Decl. ¶ 41.

*Second*, the discovery requests are temporally limited to the period during which the Proxy Statement indicates that RM was participating in the transaction through the days immediately following the Merger's closing.  *See In re Gushlak*, No. 11–MC–218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (a Section 1782 request, like any discovery request, is "reasonably calculated to lead to relevant matter if there is any possibility that the information sought may be relevant to the subject matter of the action").[5]

*Third*, Petitioner is willing to meet and confer with Respondent to address any scope or burden concerns.  If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent "from bringing a motion to quash or modify" the discovery sought.  *In re Appl. of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016).[6]

---

[5] *See also First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998) (finding subpoena reasonable that only sought documents concerning "precise subject matter of the underlying [proceedings]"); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, Civ. No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008); *Local Court of Wetzlar, Germany*, 2018 WL 2183966, at *4.

[6] *See also In re Republic of Ecuador*, 2010 WL 3702427, at *5; *Ambercroft Trading*, 2018 WL 2867744, at *5.  If the Court finds any merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant the Application.

Dated: March 6, 2023

By: */s/ Michelle L. Gearhart*

**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Michelle L. Gearhart
P.O. Box 3835
San Luis Obispo, CA 93403-3835
Telephone: (805) 543-0990
gearhart@ammcglaw.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
John McAdams*
75 Rockefeller Plaza
New York, NY 10019
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
John.McAdams@pallasllp.com

*Counsel for Petitioners*

**Pro hac vice* application forthcoming